Chief Justice Simpson
delivered the opinion of the Court.
In June, 1786, James Harrod, exhibited a bill in chancery, in the old Supreme Court, for the district of Kentucky, against John Crow, to compel him to surrender the legal title to a part of four hundred acres of land, to which the complainant claimed to have the superior equity. The suit was afterwards removed to the Dan-ville district Court, and upon the abolition of that Court, to the Lincoln Circuit Court, where it was tried; and a final decree rendered in favor of the complainant in 1805. At the time the decree was rendered the original parties to the suit had both died. The complainant Harrod, died leaving but one child a daughter, named Margaret, who after her farthers death, viz: in the year 1802, intermarried with John Fauntleroy. Crows heirs being dissatisfied with the decree, appealed to this Court, and in 1808, the decree of the Circuit Court was reversed, on the ground that it had directed the claim of Harrod, to be surveyed in an illegal and improper manner, but the equity of the complainant to so much of the land in contest, as might be embraced by the claim, when correctly surveyed, was sustained: (Hardin 435.)
When the case returned to the Circuit Court, and a survey was made in conformity with the opinion of this Court, it appeared that the complainant’s claim, and Crow’s claim interfered to the extent of one hundred and seventy acres, and thereupon at the August term, 1809, a decree was rendered, directing the defendants to convey the legal title to the interference, to John *448 Fauntleroy and wife. The decree also appointed com- . . ... . . . missioners to assess rents and value improvements. At a succeeding term of the Court, the decree was so altered, that the conveyance of the legal title to the land, was required to be made by Crow’s heirs, to Mai--garet Fauntleroy alone, in whose name, the suit had been revived after the death of her father.
Under this decree, the commissioners who were appointed to value the rents and improvements, reported a balance in favor of Crow’s heirs of seven thousand and ninety-five dollars and eighty-five cents. To this report exceptions were filed by the complainant, but were never passed upon by the Court. At the May term, 1811, the suit was ordered to be dismissed by the direction of the complainant.
Margaret Fauntleroy, who as before mentioned, was the only child and heir at law of James Harrod, and also entitled as devisee, under his will, to his interest in the land claimed in the suit against Crow, died in the year 1841. In the year 1S43, after her death, her heirs at law, sued out a writ of error, to reverse the order of the Circuit Court, dismissing the suit against Crow’s heirs. This Court however, refused to reverse it, and the decree of the Circuit Court dismissing the suit was affirmed: (5 B. Monroe 136.)
John Crow was in possession of the land in contest, before the year 1799, and those claiming under him have been in the possession of it ever since. His patent bears date in 1782. It is not deemed necessary to specify in detail, the several sales and conveyances, made by Crow, and those claiming under him. It is considered sufficient to state, that Henderson, the defendant in the present suit, was at the time it was instituted, in the possession of a part of the land, that Crow’s heirs were required to convey to Margaret Fauntleroy by the aforesaid'decree.
At the time the suit was dismissed, a part of the one hundred and seventy acres of land was claimed and possessed under Crow’s claim, by Daniel Mcllvoy, and *449 the remainder of it by John Cochran. A few days before the dismissal was made, a written agreement was entered into by John Fauntleroy and Margaret his wife of the one part, and Daniel Mcllvoy and John Cochran of the other part, the object of which was, as expressed on the face of the instrument, to settle all disputes between Harrod’s heir and the heirs of John Crow. It was stipulated in this agreement, that Fauntleroy and wife should relinquish unto Daniel Mcllvoy and John Cochran all their right and title and claim to the land in dispute between the heir of James Harrod, dec’d., and the heirs of John Crow, dec’d., being the same land decreed to the heir of Harrod in the Court of Appeals, it being as recited for the bonds given by James Harrod to Stephen Lankford, and transferred by Lankford to John Crow, dec’d., for twelve hundred acres of land in Jefferson county, when the bonds were executed, also a bond for a half acre lot adjoining the town of Danville, and that the suit in chancery should be dismissed. The suit was accordingly dismissed, and in July 1812, a deed was made by Fauntleroy and wife, in pursuance of the agreement of compromise, to Daniel Mcllvoy for that part of the land claimed and held by him under Crow. But the clerk of the County Court in his certificate, states, that Mrs. Fauntleroy, upon privy examination relinquished her right of dower in the land. The authentication is therefore defective, and the right of Mrs. Fauntleroy to the land did not pass by the deed.
It appears from the record and proceedings in the suit of Harrod’s heir against Crow’s heirs, and the agreement of compromise between Fauntleroy and wife, and Mcllvoy and Cochran, that Harrod in his lifetime had executed to Stephen Lankford bonds for twelve hundred acres of land, situated at the date of the bonds, in the county of Jefferson, as it was then bounded, and that the bonds had been assigned by Lank-ford to Crow, and had passed into the hands of Mcll-voy and Cochran, as Crow’s sub-vendees, who agreea *450 bly to the terms of the agreement between the parties,-were to surrender these bonds to Fauntleroy and wif*6
'The ground of «plaintiff mainly relied on foi recovery.
A decree directing a conveyance of land does not pass .the legal Hile, (Mummy &c. vs Johnson & o., .3 Marshall, 220 )
A conveyance in obedience to a decree directing a conveyance, may be presumed wlfbre there has been a continued possession in the per son to whom that conveyance is directed to be made — but not where the possession continues with the other party.
*450 John Fauntleroy died in 1845. In the year 1848, ■this action of ejectment was brought against the de-fendantby the heirs at law of Margaret Fauntleroy» -deceased, fo.r a small portion of the land that was in •controversy in the aforesaid suit against Crow’s heirs, .being a part-of that embraced in the deed from Fauntleroy and wife ,to Mcllv-oy, under whom the defendant •claims.
The facts here detailed w.ere proved upon the trial, ■by tire lessors-of the plaintiff. The Court instructed the jury to'find for .the defendant, as in the case of a non-suit; .and a verdict having been given, and a judgment rendered in his favor, the heirs of Margaret Fauntleroy have prosecuted this writ of error, and insist that.the instruction of the Court was erroneous.
The decree .in the suit -of Harrod’s heir against Crow’s heirs, and the deed from Fauntleroy and wife to McIIvoy., are mainly relied upon by the plaintiffs in ■error .as manifesting their right to a recovery in this case.
It .is well settled, that a decree directing a conveyance of lapd to a complainant, does not invest him or her with the legal title, until a conveyance is executed ; Mummey, et al. vs Johnson et al., (3 Mar. 220.) The decree itself, therefore, did not enable the heirs of Mrs. Fauntleroy to maintain an action of ejectment. The record of the suit in which the decree was rendered, shows that her right to the land was a mere equitable .one, and that the legal title was in Crow’s heirs.
It is however, con tended that the jury might have presumed the execution of the decree by a deed of conveyance upon the part of the defendants, after the lapse of such along period of time. Such a presumption would not only be admissible, but peculiarly proper under certain circumstances. If the party in whose favor a decree for a conveyance of land was rendered *451 continued in the possession of the land, and derived from the decree every advantage and benefit it was designed to confer, the legitimate presumption would be, after so long a time had elapsed, being about thirty-eight years, that the decree had been complied with. But the circumstances in this case are entirely different, and absolutely prohibit the indulgence of any such presumption. In the- year following that in which the decree was rendered, the suit was compromised by the parties,- and dismissed by th’e complainant. The benefit of the decree was surrendered, and the right to the land yielded to the defendants in possession. The defendants after this arrangement was made,- did not consider themselves under any obligations to comply with the decree, nor could it, after the dismissal of the suit, have been enforced by the complainants,- if at all, Without another suit for that purpose, based upon such facts as would have entitled her to claim t-h'e benefit of the decree, notwithstanding the suit had been dismissed. How then could a presumption arise, that the legal title had been conveyed to Mrs. Fa'untl'eroy in compliance with the decree, when the parties themselves did not contemplate its execution^? The facts repel any such presumption. The defendants had the possession and the legal title. The suit when pending and undetermined, had been compromised by the parties,- and dismissed by the complainant, with the avowed purpose of annulling the operation of the decree, and permitting the defendants to retain the title and possession of the land in- contest, their title to which, was to be perfected by a conveyance of the equity of the complainant Margaret Fauntleroy, The subsequent lapse of time cannot create a presumption, that is clearly inconsistent with the avowed intention and understanding of the parties; so fully and’ explicitly developed by > the whole scope and design of the arrangement between them, and by the terms of their contract of compromise.
*452 It appears that after the decree was rendered, and before the suit was dismissed, an order was obtained on the motion of the complainants, awarding an attachment against the defendants Cochran and wife, for refusing to execute a deed of conveyance as directed by the decree. As such an order had been obtained, the presumption legitimately arises, as it is contended, that a deed was executed in fulfillment of. the requisitions of the decree, before the order of dismissal was entered. The argument is, that as the attachment was only awarded against part of the defendants, the fair inference is, that the other defendants had previously complied wdth the decree; and as the attachment awarded was never issued, the additional inference-is authorized, that the defendants against whom it was ordered, had made a conveyance without any further compulsion. It must be recollected however, that these inferences are deduced not from any thing done by the defendants, but from the act of the complainants; and also that they can derive no aid from the time that has elapsed since the suit was dismissed. To apply to them, therefore, a fair test, let us suppose that an action of ejectment had been brought by Fau'ntleroy and wife against the tenants in possession immediately after the time the suit was dismissed, and the decree and order referred to, had been alone relied upon, to show title in Mrs. Fauntleroy. Would a jury have been authorized to presume that Crow’s heirs had conveyed the legal title in compliance with the decree ? There would have been no foundation for such a far-fetched and remote presumption, and it would have been wholly inadmissible. The decree only required an immediate conveyance to be executed by the adult heirs, there being three of them, two of.whom were married women. A conveyance by the infant heirs was decreed to be made by them, as they respectively attained the age of twenty-one. It does not appear that any one of the infant defendants had arrived at full age and been in default, at the time the suit was dismissed. A *453 deed executed by thq femes covert would not have passed the title to the grantee, unless it had been legally recorded. Uunder such circumstances, a presumption that the decree had been complied with, and a deed executed, although it was not produced, founded alone upon the act of the complainants, in having obtained an order for an attachment against one of the heirs and her husband, w'hich had never been sued out, would have had no foundation to rest upon, and have been clearly unauthorized. The jury therefore, could not upon this ground, have legally and properly presumed that the title had been conveyed to Margaret Fauntleroy, and had descended to and vested in her heirs upon her death.
It is admitted that as a general rule, a plaintiff in an action of ejectment must have the legal title to the land claimed, to enable him to recover. But it is contended, that in this case, as the defendant claims under Mcllvoy he is estopped by the article of agreement between Fauntleroy and wife, of the one part, and said Mcllvoy and Cochran of the other part, and the deed in pursuance thereof made by Fauntleroy and wife, to Mcllvoy, to deny that Mrs. Fauntleroy had title; and that consequently, it is immaterial to the right of recovery of the plaintiff’s in error, whether the legal title had or not, been conveyed to her by Crow’s heirs.
The following recitals in said writings are relied upon as creating the estoppel.
“Know all men my these presents, that we John Fauntleroy and Peggy his wife, of the county of Mercer and State of Kentucky, have sold and relinquished unto Daniel Mcllvoy and John Cochran, of the town of Danville, and State aforesaid, all our right title and claim, to the land in dispute between the heirs of James Harrod deceased, and the heirs of John Crow deceased, adjoining the town of Danville, or in Danville, and which was decreed to the heir of said Harrod, in the Court of Appeals, it is at this time in the Lincoln Cir *454 cuit Court. ' We bind ouselves, our heirs, executors,administrators, and assigns to convey the said land to-Daniel Mcllvoy and John Cochran, their heirs &c. This-is a part of the article of agreement, executed by the parties.”
The language of that part of the deed that is supposed to have a bearing upon the question, is as follows:
“That for and in consideration of the sum of one dollar, by the said Mcllvoy, to said John Fauntleroy, and Margaret his wife in-hand paid, the receipt whereof they do hereby acknowledge, and for divers other valuable considerations named in certain articles of agreement'made and entered into the 8t,h May, 1811, as the same bears date, by and between the said John and Margaret and Daniel Mcllvoy and John Cochran, they, the said John Fauntleroy and wife, have bargained and sold, and by these presents do bargain, sell, and convey unto the said Daniel Mcllvoy and his heirs forever, a certain tract or parcel of land situate in and contiguous to the town of Danville, in the county aforesaid, containing by survey 105£ acres, 68 poles, and 27 square feet, it being the land decreed by the Court of Appeals, to Harrod’s heir, and bounded as' follows, &c., viz:
The statement that the land contained in the deed, and in the agreement of compromise, was the same land that was decreed by the Court of Appeals to Har-rod’s heir, is relied upon as an admission that Margaret Fauntleroy had the title to it, and as concluding the defendant in this case, from alleging the contrary. But such an implication does not necessarily arise from the language used, even unexplained, by a reference to the decree itself. It may have been decreed to her, and still the title have been in the defendants. It at most only admits the existence of such a decree; but the decree itself must be examined, in order to ascertain the character of the right of Harrod’s heir to the land. In looking to it, her fight to the land is ascer- ■ *455 lai'ued to have been an equitable one merely. The admission that such a decree was rendered, cannot with ■any propriety be construed to mean that she had any other right or title to the land, than that which is manifested by the decree. There is nothing contained in the writings therefore, which operates as an estoppel on the defendant to show that her right to the land was an equitable one merely, that she was not invested with the legal title, and that therefore her heirs cannot maintain an action of ejectment for the land.
A hostile possession may be changed into an amicable one by the agreement of parties, but to have that effect it should clearly appear that the title of^ the claimant is re* cognized and a right to the poss ession also. And it also appear that the tenant has the right to assume that rela tion, not owing allegiance to any other person or landlord: Hig-ginbotham vs Pish bade, I Mar shall 506 Bolts •vs Shields, 3. Lilt, 34. An agreement to become tenant is the only means by which he be* comes so with the purchaser oí an adverse title.
*455 The plaintiffs in error, however, rely upon another point, which they contend is conclusively in their favor, and entitles them to recover, under the facts in this case. It is, thpt since the execution of the deed by Fauntleroy and wife to Mcllvoy, the grantee, and the defendant who claims under him, have held under the title of Margaret Fauntleroy, and that the defendant’s attitude precludes him from the right to contest her title.
In support of this proposition it is urged, that the decree in favor of Harrod’s heir was tantamount to an eviction of the tenants in possession from the land by her, and they having procured a deed from her husband and herself purporting to convey her title, must be regarded as holding under it since that period, and occupying substantially, the relation of landlord and tenant, so far as the title of the land is concerned.
the other hand, it is contended that this doctrine o^ly,applies to cases where the defendant has obtained the possession of the land from the plaintiff, and that it has no application to a case, like the present, which was in reality the purchase of an outstanding claim, made for the purpose of terminating a vexatious controversy.
The relation however, of landlord and tenant may exist where the possession of the land has not been obtained from the landlord, or under his tille. A hostile possession may be changed into an amicable one by the agreement of the parties. But to have this effect, *456 the agreement should contain a clear recognition of tiie claimant’s title to the land, and a right to the possession of it, and the defendant must also have a right to assume the relation of tenant. In the cases referred to by the counsel of the plaintiffs in error, in support of the doctrine contended for on this point, agreements were made between the parties, by which the person in possession became by express contract the tenant of the other party, and agreed to hold the land under him in that character. In such cases, no doubt can exist of the intention of the parties, and the only question that can be made, relates to the right of the tenant in possession to make such an agreement and to convert a hostile into an amicable possession. If he claim the land as his own, and holds no person responsible for the validity of his title, he may if he choose surrender the possession to an adverse claimant, or enter into an agreement admitting the superiority of his title and change his hostile possession into one that is amicable. If, however, he owes allegiance to the title under which he holds the possession, the law does not permit him voluntarily to renounce it, but he is under obligations to adhere to it until it has been legally ascertained that such title is not sufficient to afford him protection against the adverse claim. An occupant by purchasing an adverse claim does not change the character of the possession: Higginbotham vs Fishback, (1 Mar., 506.) Botts vs Shield’s heirs, (3 Lit. 34.) This effect is produced only by an agreement that the occupant shall become the tenant of his vendor, and hold the possession under his title, and not merely by the purchase of an outstanding superior title.
The intention of the parties is to govern in regard to a purchase of another title by one in possession. If it is to guard a possession already acquired, it cannot be to become tenalof the holder oí the title purchased.
The effect in this case, of the contract and conveyance alluded to upon the character of the subsequent possession of the defendants must be determined by the intention of the parties, and their rights and attitude at the time the agreement was entered into by them, and the terms and stipulations, and object of that agreement.
*457 The equitable right to the land was decided to be in Margaret Fauntleroy. The defendants had the legal title and the possession, and a claim for improvements that was undetermined. They were directed to convey the legal title to Mrs. Fauntleroy, but the decree did not order them to surrender the possession to her. According to equitable principles, they had a right to retain the possession until they were paid for the improvements, and had a lien upon the land to secure the payment. But looking to the decree as it was rendered, without regard to general equitable principles, it is apparent that the defendants were not required by it to surrender the possession of the land, and that it did not amount to a decree of eviction. Without an additional decree or some further legal proceeding, the complainant could not have obtained the possession of the land. The defendants had a right to retain it, and by so doing, were not disobeying or disregarding either the letter or the spirit of the decree. There was nothing in the decree npon W’hich a writ of habere facias could have issued, to give to the complainant the possession of the land. It is not, therefore, deemed necessary to decide what the legal effect of the contract of compromise and conveyance made in pursuance thereof, would have had upon the character of the subsequent possession of the defendants under the circumstances of the case, if the decree had required then!» not only to convey the title to the complainant, but also to deliver to her the possession of the land.
The litigation between the parties had not been terminated. The controversy was in an attitude which -not only permitted a compromise to be entered into by the parties, but which may have made it peculiarly appropriate, and apparently desirable on the part of the complainant. The question is not as to the validity or extent of the defendant’s claim for improvements. The claim was made and unsettled, and appeared to be of very considerable magnitude. The matters in controversy between the parties had been only partially *458 decided by the decree that had been pronounced. While the contest remained in this condition, the compromise was made, and the suit dismissed. The obvious intention of the parties was, that the legal title of the defendants should be perfected by the acquisition of the outstanding equitable title, and that the complainant should surrender all claim to the land that had been in controversy. The transaction gives no color to the inference, nor authorizes 'in any degree, the assumption that the defendants were to hold the possession of the land under the title of the complainant, or that the character of their possession was to be changed by the arrangement. They held the possession under an adverse claim, having the elder legal tide. But as the superior equitable title was in Margaret Fauntleroy, it required the union of bolh titles to give them a complete right to the land. They still retained their own title, and attempted to procure the other. By the contract of compromise, it manifestly and conclusively appears that their object was to procure the complainant’s right to render their own title valid; and there is nothing in any part of the transaction indicating an intention on their part to hold the possession of the land under her title, .or an expectation or belief on the part of her or her husband, that it was to be thus held, nor did the arrangement produce such a legal effect upon the character- of their possession.
The legal title necessary _ lo mnintain eject-stent.
The suit was .compromised and dismissed for the purpose of adjusting not only the matters of controversy which it involved, but also other matters originating out of claims held by the defendants against the estate of James Harpod, the father oí the complainant, and for the payment of which, the estate which had descended to her-was liable. The surrender of these claims may have been a fair and full equivalent for her right to the land embraced in the decree, and if so, she sustained no prejudice by the dismissal of the suit, which was evidently done with her knowledge and consent, although the .deed which she and her husband attempted *459 to execute, did not in consequence of the unskilfulness of the clerk, before whom she acknowledged its execution, have the legal effect to convey her title to the grantee. But whether or not, as her title to the land was merely an equitable one, it could only have been asserted by her in a Court of equity; and if the compromise and dismissal of the suit under the circumstances, did not preclude her from seeking relief by another suit, her remedy would have been by an appeal to the chancellor. Her heirs occupy her position and are only invested with her right, and as it was equitable merely, they coaid not maintain this action of ejectment for the land in contest.
Bradleij and Hewitt for plaintiffs; Harlan„ Barbour,. and Bell for defendant.
Wherefore the judgment of the Circuit Court is affirmed.